UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMIN LAFRANCO PEQUERO, RUBEN
MOJICA, and HENRY MARTINEZ, *on behalf of
themselves and other persons similarly situated*,

Plaintiffs,

-against-

MONTAFON, LLC, *d/b/a* MONT BLANC 52,
BALZ EGGIMANN, and MARIA LOHMEYER,
*individually*,

Defendants.

18cv12187 (DF)

**MEMORANDUM
AND ORDER**

---

**DEBRA FREEMAN, United States Magistrate Judge:**

In this action brought under the Fair Labor Standards Act (the "FLSA") and the New

York Labor Law (the "NYLL"), which is before this Court on consent pursuant to 28 U.S.C.

§ 636(c) (*see* Dkt. 16), plaintiffs Amin LaFranco Pequero ("Pequero"), Ruben Mojica

("Mojica"), and Henry Martinez ("Martinez") (collectively, "Plaintiffs") bring claims alleging,

*inter alia*, that they were denied overtime pay while employed by defendants Montafon LLC

("Montafon"), d/b/a "Mont Blanc 52," Balz Eggiman ("Eggiman"), and Maria Lohmeyer

("Lohmeyer") (collectively, "Defendants").  Currently before the Court is a motion made

pursuant to Section 216(b) of the FLSA, by which Plaintiffs seek conditional certification of a

collective of similarly situated employees and ask the Court to facilitate Court-authorized notice,

so that the similarly situated employees may opt into Plaintiffs' collective action.  For the

reasons that follow, Plaintiffs' motion (Dkt. 58) is granted in part and denied in part.

## BACKGROUND

### A.    Factual Background

According to the Second Amended Complaint, defendant Eggiman owns, and defendant Lohmeyer manages, Mont Blanc 52, a Swiss-Austrian restaurant located in Manhattan (the "Restaurant").  (*See* Second Amended Complaint, dated July 16, 2019 ("2d Am. Compl.") (Dkt. 49) ¶¶ 3-5, 38.)  Plaintiffs allege that both Eggiman and Lohmeyer maintain control, oversight, and the direction of Montafon LLC.  (*Id.* ¶¶ 17, 22.)  Plaintiffs also plead that Montafon is engaged in interstate commerce, has gross annual sales in excess of $500,000, and has "purchased and handled goods moved in interstate commerce" (*id.* ¶¶ 28-29), bringing it within the coverage of the FLSA, *see* 29 U.S.C. §§ 206(a), 207(a)(1).  Plaintiffs allege that each of the Defendants qualifies as an "employer" under the FLSA, as each exercises sufficient control over Montafon and its employees' working conditions, has the authority to hire and fire employees, and established and maintains policies regarding Montafon's pay practices for its workers.  (*Id.* ¶¶ 19-21, 23-25.)  The nature of Plaintiffs' work for Defendants, as well as their hours and pay, are set out in the Second Amended Complaint and in Declarations that have been submitted in connection with the motion for conditional certification and are summarized below.

### 1.    Plaintiff Pequero

Plaintiff Pequero alleges that he was employed by Defendants at the Restaurant from December 2017 through December 5, 2018.  (2d Am. Compl. ¶ 40; *see also* Declaration of Amin LaFranco Pequero in Support of Plaintiffs' Motion for Conditional Collective Certification, dated May 20, 2019 ("Pequero Decl.") (Dkt. 60) ¶ 1.)  He alleges that he worked primarily as a salad maker (2d Am. Compl. ¶ 40; *see also* Pequero Decl. ¶ 2), and, in the Second

Amended Complaint (although not in his Declaration), he alleges that he was also tasked with washing dishes, cleaning the restaurant, and doing prep cook work (2d. Am. Compl. ¶ 41).

Pequero asserts that, for the first eight months of his employment at the restaurant, he worked nine hours per day, six days per week, for a total of 54 hours per week, with no rest breaks.  (Pequero Decl. ¶¶ 5, 6, 11.)  He states that, until August 2018, Defendants had no formal process by which they kept track of his hours, and he was not required to clock in and clock out.  (2d Am. Compl. ¶ 47; Pequero Decl. ¶ 8.)  According to Pequero, a time clock was eventually put in place as a result of "a former employee['s] retaining counsel and resolving a claim under the FLSA and NYLL."  (2d. Am. Compl. ¶ 49.)  Throughout the "majority" of his employment at the restaurant, Pequero asserts that he was paid on Saturdays by a check that reflected the prior week's work.  (Pequero Decl. ¶ 12.)  He declares that he was paid a "lump sum" each week, regardless of the number of hours he worked (*id*. ¶¶ 13-14), and, in the Second Amended Complaint, he alleges that the amount of his pay was consistently $800 per week (2d. Am. Compl. ¶ 52).  He further alleges that, while he did receive a paystub when he was paid, the paystub merely listed the gross amount paid (*id*. ¶ 53) and did not delineate the hourly rate of pay, overtime rate of pay, total hours worked, or any deductions or allowances claimed (*id*. ¶ 54).  Based on his hours and pay, Pequero asserts that he was denied overtime pay for the hours that he worked in excess of 40 hours per week.  (2d Am. Compl. ¶¶ 43-46; Pequero Decl. ¶ 7.)

In his Declaration, Pequero also asserts that other employees complained to him that they too were denied overtime pay, despite working in excess of 40 hours per week.  (Pequero Decl. ¶ 15.)  He provides the names (to the extent known to him) of five former employees who complained to him – Ruben Mojica, Henry Jaquez, and three workers whom he can only identify by their first names:  Aldenson Doe, Juan Doe, and Armando Doe – and states that he would also

list the names of individuals who are currently employed by Defendants, but fears that, if he were to do so, they would be "retaliated against."  (*Id.*)

### 2.   **Plaintiff Mojica**

Plaintiff Mojica was allegedly employed by Defendants at the Restaurant from June 11, 2017 through February 15, 2019.  (2d Am. Compl. ¶ 55; *see also* Declaration of Ruben Mojica in Support of Plaintiffs' Motion for Conditional Collective Certification, dated May 20, 2019 ("Mojica Decl.") (Dkt. 59) ¶ 1.)  He states that, from June through December 2017, he washed dishes and cleaned the restaurant, bathrooms, and refrigerators (2d Am. Compl. ¶ 56; Mojica Decl. ¶ 2), and, in his Declaration, he further states that, from January through March 2018, he was also responsible for making salads and desserts on Mondays and Thursdays (Mojica Decl. ¶ 3).[1]  For the period from March 2018 through the end of his employment, he states that he was responsible for all the cleaning in the restaurant, as well as for preparing salads and desserts during the morning shift every day.  (2d Am. Compl. ¶ 58; Mojica Decl. ¶ 4.)[2]

Mojica asserts that, from June 2017 to June 2018, he worked eight hours per day, six days per week, for a total of 48 hours per week.  (2d Am. Compl. ¶¶ 59, 61-62; Mojica Decl. ¶¶ 6-7.)  In the Second Amended Complaint, he also alleges that he did not receive any breaks in the course of his employment at the restaurant.  (2d Am. Compl. ¶ 65).  He states that, from July

---

[1] While Mojica states in his Declaration that he started making salads and desserts on Mondays and Thursdays after the first six months of his employment (which would be January 2018), the Second Amended Complaint alleges that Mojica was assigned this task starting in March 2017; this is apparently a pleading error, as Mojica allegedly began his employment with Defendants in June 2017.  (*Compare* 2d. Am. Compl. ¶¶ 55-57 *with* Mojica Decl. ¶¶ 2-3.)

[2] Consistent with n.1, *supra*, although Plaintiffs allege in the Second Amended Complaint that Mojica was assigned these tasks in March 2017, the Court assumes that Mojica was in fact assigned these tasks in March 2018, as Mojica allegedly began his employment with Defendants in June 2017.

2018 to February 2019, his hours were reduced and varied every day.[3]  (Mojica Decl. ¶ 11.)  He suggests that Defendants reduced his hours because "a former employee hired a lawyer to resolve overtime payments against Mont Blanc 52."  (*Id.* ¶ 2; *see also* 2d. Am. Compl. ¶¶ 63-64 (alleging that Defendants started to require Mojica and other workers to clock in and out in August 2018, which Mojica believed resulted from "a former employee['s] retaining counsel and resolving a claim under the FLSA and NYLL").)

Throughout his employment at the restaurant, Mojica asserts that he was paid "the same lump sum" by check every Saturday.  (Mojica Decl. ¶¶ 9-10.)  In the Second Amended Complaint, he alleges that, from June 2017 through December 2017, he was paid $724.72 per week (2d. Am. Compl. ¶ 67), and then, from January 2018 through February 16, 2019, he was paid $775.80 per week (*id.* ¶ 68).  Mojica now states that, while he received a paystub when he was paid, the paystub merely listed the gross amount paid, without specifying the hours he worked.  (Mojica Decl. ¶ 10.)  Based on his hours and pay, Mojica contends that he was denied overtime pay for the hours he worked in excess of 40 hours per week.  (2d Am. Compl. ¶ 60; Mojica Decl. ¶ 8.)

In his Declaration, Mojica asserts that other employees complained to him that they too were denied overtime pay despite working in excess of 40 hours per week.  (Mojica Decl. ¶ 13.)  Like Pequero, he provides names, to the extent known, of certain former employees who complained to him – Amin Pequero, Henry Jaquez, Juadimil Jerez, Henry Montero, and three former employees whom he identifies only by their first names:  Aldenson Doe, Juan Doe,

---

[3] The Second Amended Complaint alleges that Plaintiffs' hours were not reduced until August 2018, and, at that time, Defendants started to require Plaintiffs to clock in and out.  (2d. Am. Compl. ¶ 63).

Armando Doe – and, like Pequero, he states that he would also list the names of individuals who are currently employed by Defendants, but fears that they would be "retaliated against." (*Id.*)

### 3.   **Plaintiff Martinez**

The Second Amended Complaint alleges that plaintiff Martinez (who has not submitted a declaration in support of conditional certification) was employed by Defendants at the Restaurant from May 2017 through May 2018. (2d. Am. Compl. ¶ 70.) According to Plaintiffs' pleading, Martinez worked primarily as a dishwasher, but his duties also included cleaning the restaurant and preparing salads. (*Id.* ¶¶ 70-71.) In May 2017, he allegedly worked nine hours per day, six days a week, for a total of 54 hours per week, with no rest breaks. (*Id.* ¶¶ 75, 80.) From June 2017 to March 2018, he allegedly worked eight or nine hours a day for two days per week and nine hours per day for four days per week, for a total of about 52 hours per week, with no rest breaks. (*Id.* ¶¶ 76, 80.) Finally, in April 2018, he allegedly worked eight to nine hours per day for four days per week and nine hours per day once per week, for a total of about 41 hours per week, with no rest breaks. (*Id.* ¶¶ 77, 80.) According to the Second Amended Complaint, from May 2017 to May 2018, Defendants did not require him to clock in and clock out. (*Id.* ¶ 8.) Throughout his employment at the restaurant, he was allegedly paid $550 per week, and, although he has conceded, in Plaintiffs' pleading, that he received a paystub when he was paid, the paystub allegedly provided only the gross amount paid, such that, like the paystubs of the other named plaintiffs, it did not delineate the hourly rate of pay, overtime rate of pay, total hours worked, or any deductions or allowances claimed. (*Id.* ¶¶ 82-84.) Based on his hours and pay, Martinez alleges that he was denied overtime pay for the hours that he worked in excess of 40 hours per week. (*Id.* ¶ 74.)

B.       **Procedural History**

Pequero filed the Complaint initiating the instant proceeding on December 26, 2018,

asserting claims under both the FLSA and the NYLL.  (*See* Complaint, dated Dec. 26, 2018

(Dkt. 1).)  Defendants filed their Answer to the Complaint on February 12, 2019.  (*See* Answer,

dated Feb. 12, 2019 (Dkt. 10).)  On May 20, 2019, Plaintiffs submitted a letter motion to amend

the Complaint for the purpose of adding Mojica as a plaintiff (Dkt. 18), but, on May 31, 2019,

based on the original Complaint, Plaintiffs filed a motion for conditional certification of an

FLSA collective and facilitation of notice pursuant to 29 U.S.C. 216(b).  (*See* First Motion to

Certify Class, dated May 31, 2019 (Dkt. 21).)  On June 3, 2019, Plaintiffs' motion to amend was

granted and Plaintiffs' motion for conditional certification was thereupon denied without

prejudice.  (Dkt. 27.)

On June 10, 2019, Plaintiffs filed their First Amended Complaint, adding Mojica as a

Plaintiff (*see* First Amended Complaint, dated June 6, 2019 (Dkt. 39)), and, simultaneously,

refiled their motion for conditional certification (Dkt. 34).  Defendants answered Plaintiffs' First

Amended Complaint on June 14 (Dkt. 40) and filed a memorandum of law opposition to the

motion for collective certification on June 24 (Dkt. 41).  On July 16, 2019, however, Plaintiffs

again sought leave to file an amended complaint, this time to add Martinez as a plaintiff.

(Dkt. 43.)  The Court granted the motion to amend and Plaintiffs filed their Second Amended

Complaint on August 7, 2019.  (Dkt. 49.)  Defendants answered the Second Amended Complaint

on August 20, 2019.  (Dkt. 52.)

On September 11, 2019, the Court issued an Order denying without prejudice Plaintiffs'

renewed motion for conditional certification and directing the Plaintiffs to refile their motion, so

as to reflect the allegations in the Second Amended Complaint, and to be accompanied by an

affidavit or declaration from Martinez, if appropriate.  (Dkt. 56.)  Accordingly, Plaintiffs filed

the instant Second Motion for Conditional Certification on September 18, 2019.  (Dkt. 58.)  By

their motion, Plaintiffs seek to proceed in this case on behalf of themselves and all similarly

situated persons employed by Defendants at any time in the six years prior to the filing of the

instant lawsuit.  (*See* Memorandum of Law in Support of Conditional Certification, dated Sept.

18, 2019 ("Pl. Mem.") (Dkt. 62) at 9.)  In support of their motion, Plaintiffs again submitted the

Declarations cited above (Pequero Decl., Mojica Decl.), a memorandum in support of the motion

(Pl. Mem.), and a Declaration from Plaintiffs' counsel, accompanied by Plaintiffs' proposed

notice to potential collective action members and a proposed consent-to-join form (Declaration

of Jacob Aronauer, dated Sept. 18, 2019 ("Aronauer Decl.") (Dkt. 61)).  Plaintiffs did not,

however, submit a declaration from Martinez.

On October 1, 2019, Defendants filed a memorandum in opposition to the motion.  (*See*

Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification and

Issuance of Notice, dated Oct. 1, 2019 ("Def. Mem.") (Dkt. 63).)  Along with their

memorandum, Defendants submitted Declarations from Lohmeyer (Declaration of Maria

Lohmeyer, dated Sept. 25, 2019 ("Lohmeyer Decl.") (Dkt. 63-2)) and Eggiman (Declaration of

Balz Eggiman, dated Sept. 25, 2019 ("Eggiman Decl.") (Dkt. 63-3)).  Defendants' counsel also

submitted his own Declaration, to which he attached copies of Plaintiffs' Second Amended

Complaint and Defendants' Second Amended Answer.  (Declaration of Younghoon Ji, dated

Oct. 1, 2019 ("Ji Decl.") (Dkt. 63-1).)

Plaintiffs filed a reply memorandum on October 8, 2019.  (*See* Reply in Support of

Conditional Certification, dated Oct. 8, 2019 ("Pl. Reply") (Dkt. 64).)

**DISCUSSION**

I. **APPLICABLE FLSA STANDARDS**

"The FLSA was designed 'to correct and as rapidly as practicable to eliminate' the practice of employers failing to pay its employees proper wages." *Armenta v. Dirty Bird Grp., LLC*, No. 13cv4603 (WHP), 2014 WL 3344287, at *1 (S.D.N.Y. June 27, 2014) (quoting 29 U.S.C. § 202(b)). "Under the FLSA, Congress prescribes a minimum wage to foster the 'minimum standard of living necessary for health, efficiency, and general well-being of workers,'" and employers may be found liable if they fail to pay their employees in accordance with the federal minimum wage. *Id.* (quoting 29 U.S.C. § 202(a)). The FLSA also "requires employers to pay overtime for employment 'in excess of [40 hours per week] . . . at a rate not less than one and one-half times the regular rate at which [the employee] is employed.'" *Benitez v. Demco of Riverdale, LLC*, No. 14cv7074 (CM), 2015 WL 3780019, at *2 (S.D.N.Y. June 15, 2015) (alterations in original) (quoting 29 U.S.C. § 207(a)(1)).

A. **Section 216(b)**

Section 216(b) of the FLSA allows employees to "recover unpaid minimum wages and/or overtime compensation from an employer who violates the [FLSA's] provisions, and permits such an action to be brought as a collective action." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010). Pursuant to Section 216(b):

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320 (S.D.N.Y. 2007) (noting that employees can maintain a collective action against an employer

where the employees are (1) "similarly situated" and (2) give their consent to become a party in

writing).

There are three "essential features" of an FLSA collective action under Section 216(b).

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).

> First, in order to participate in a collective action, an employee
> must "opt-in," meaning the employee must consent in writing to
> join the suit and that consent must be filed with the court.  Second,
> the statute of limitations runs on each employee's claim until his
> individual Consent Form is filed with the court.  Third, to better
> serve the FLSA's "broad remedial purpose," courts may order
> notice to other potential similarly situated employees to inform
> them of the opportunity to opt-in the case.

*Id.* (*quoting Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)).  Thus, "[a]lthough

Section 216(b) does not explicitly address court-authorized notice, 'it is 'well settled' that district

courts have the power to authorize an FLSA plaintiff to send such notice to other potential

plaintiffs.'"  *Grant v. Warner Music Grp. Corp.*, No. 13cv4449 (PGG), 2014 WL 1918602, at *2

(S.D.N.Y. May 13, 2014) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d

101, 104 (S.D.N.Y. 2003)) (additional citations omitted).

### B.    Motions for Conditional Certification

"Procedurally," the Second Circuit has "endorsed a two-step process for certifying FLSA

collective actions based on the 'similarly situated' requirement."  *Scott v. Chipotle Mexican

Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. Apr. 1, 2020).

> At step one, the district court permits a notice to be sent to
> potential opt-in plaintiffs if the named plaintiffs make a modest
> factual showing that they and others together were victims of a
> common policy or plan that violated the law.  At step two, with the
> benefit of additional factual development, the district court
> determines whether the collective action may go forward by
> determining whether the opt-in plaintiffs are in fact similarly
> situated to the named plaintiffs.

*Id.* (internal quotation marks and citation omitted).

On an initial, pre-discovery motion for conditional certification of a collective – *i.e.*, a "step one" motion, such as the one currently before this Court – the court looks to the pleadings, and to any statements made by plaintiffs in submitted affidavits or declarations, to determine whether the named plaintiffs have made the requisite initial showing that the proposed opt-in plaintiffs are "similarly situated" to them. *See Fasanelli*, 516 F. Supp. 2d at 321; *see also In re Penthouse Executive Club Comp. Litig.*, No. 10cv01145 (NRB), 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010). At this initial stage, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Summa*, 715 F. Supp. 2d at 385 (internal quotation marks and citation omitted); *see also Lynch,* 491 F. Supp. 2d at 368 ("Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." (citations omitted)); *Bijoux v. Amerigroup N.Y.*, *LLC*, No. 14cv3891 (RJD) (VVP), 2015 WL 4505835, at *3 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015) (At this stage "the court's task is only to conclude whether there *may be* other similarly situated workers, and [the court] need not evaluate the underlying merits of a plaintiff's claims" (internal quotation marks and citations omitted; emphasis in original)). Additionally, as "the initial [collective] certification determination [is] made . . . on preliminary documents such as pleadings and affidavits," the determination is "necessarily [based on] unproven allegations." *Fasanelli*, 516 F. Supp. 2d at 321-22 (rejecting defendant's arguments that declarations provided by plaintiff should not be relied upon because they contained "inadmissible hearsay, speculation, personal beliefs and conclusions," and granting conditional certification).

Further, as noted above, the burden imposed on plaintiffs at the first, conditional

certification stage is "modest," *Scott*, 954 F.3d at 515, and, indeed, some courts have

characterized it as "light," *see Sanchez v. Gansevoort Mgmt. Grp.*, No. 12cv75 (KBF), 2013 WL

208909, at *1 (S.D.N.Y. Jan. 10, 2013), or even as "minimal," *see Amador v. Morgan Stanley &

Co.*, No. 11cv4326 (RJS), 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013) (citation omitted).

The burden at this stage is "low" because "the purpose of this first stage is merely to determine

*whether* similarly situated plaintiffs do in fact exist." *Myers v. Hertz Corp.*, 624 F.3d 537, 555

(2d Cir. 2010) (citations omitted; emphasis in original).  It is not until the second stage, upon a

"full review of the factual record developed during discovery," that the court determines

"whether opt-in plaintiffs are *actually* 'similarly situated.'" *Amador*, 2013 WL 494020, at *4

(internal quotation marks and citation omitted; emphasis in original).  At bottom, while

conditional certification is not automatic, and while a plaintiff's showing in support of

certification cannot be entirely conclusory, *see, e.g.*, *Morales v. Plantworks, Inc.*, No. 05cv2349

(DC), 2006 WL 278154, at *2-3 (S.D.N.Y. Feb. 2, 2006) ("[I]n making this showing,

'[c]onclusory allegations are not enough.'" (alteration in original; citation omitted)), courts have

recognized the leniency of the standard at this first stage, and thus have "typically grant[ed]

conditional certification," *Amador*, 2013 WL 494020, at *3 (alteration omitted) (quoting

*Malloy v. Richard Fleischman & Assocs. Inc.,* No. 09cv332 (CM), 2009 WL 1585979, at *2

(S.D.N.Y. June 3, 2009)).

If, based on the plaintiffs' pleadings and submitted affidavits or declarations, the court is

satisfied that at least a modest showing has been made that the opt-in plaintiffs are "similarly

situated" to the named plaintiffs, then it will authorize that notice be sent to potential opt-in

plaintiffs.  *Fasanelli*, 516 F. Supp. 2d at 321.  After discovery is complete, the court will then

evaluate the full record before it to determine whether the opt-in plaintiffs are, in fact, "similarly situated." *Id.* "If they are not, the [collective] can be decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without prejudice." *Id.*

"Neither the FLSA nor its implementing regulations define 'similarly situated.'" *Summa*, 715 F. Supp. 2d at 385 (citing *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). In *Scott*, however, the Second Circuit considered how the term should be viewed, and concluded that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott*, 954 F.3d at 516 (citation omitted). "That is," the Circuit explained, "party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. For this reason, as long as "named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Id*. (internal quotation marks and citation omitted). Thus, "[i]f the opt-in plaintiffs are similar to the named plaintiffs in some respects material to the disposition of their claims, collective treatment may be to that extent appropriate, as it may to that extent facilitate the collective litigation of the party plaintiffs' claims." *Id*.

The Second Circuit's analysis in *Scott* particularly focused on the question of how district courts should analyze an evidentiary record, when considering whether a conditionally certified collective should be decertified, at the second step of the certification process. *See id*. at 515-20. As for the initial procedural step, the court provided less guidance, but, logically, there should certainly be no more stringent test for "similarity" at the first, more lenient, stage of the certification process. Thus, this Court understands that the requirement that

the named plaintiffs make an initial "modest factual showing that they and others together were victims of a common policy or plan that violated the law," *id*. at 515, means that they must simply show, through pleadings, affidavits, and/or declarations that are not entirely conclusory, that they and the potential opt-in plaintiffs share at least some similar "issue of [material] law or fact," with respect to the defendant's alleged unlawful wage policy or plan, s*ee id*. at 516.

    **C.**    **<u>Notice</u>**

    Once a court determines that a named plaintiff has met his or her burden for initial certification of a collective, the court may grant court-authorized notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit.  *Lynch,* 491 F. Supp. 2d at 367. The Supreme Court has held that:

> court-supervised notice is the preferred method for managing the notification process for several reasons:  it avoids "multiplicity of duplicative suits;" it allows the court to set deadlines to advance the disposition of an action; it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations.

*Id.* (quoting *Hoffmann-La Roche*, 493 U.S. at 171-72).

    "[T]he form and content of the notice . . . is to be approved by the [c]ourt prior to mailing," in order to prevent "after-the-fact disputes between counsel" regarding the form and manner of the notice and the opt-in plaintiffs' consent form.  *Krueger v. New York Tel. Co.*, No. 93cv0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-La Roche*, 493 U.S. at 170).  The content of the notice is left to the broad discretion of the district court, *see Fasanelli*, 516 F. Supp. 2d at 323 (citing *Hoffmann-La Roche*, 493 U.S. at 170 and stating that "[t]he Supreme Court has abstained from reviewing the contents of a proposed notice under § 216(b), noting that such 'details' should be left to the broad discretion of the trial court"), and "neither the FLSA nor the courts 'have specifically outlined what form court-

authorized notice should take,'" *Amador*, 2013 WL 494020, at *9 (quoting *Fasanelli*, 516 F.

Supp. 2d at 323).  When exercising discretion, courts in this District consider the overarching

policies of the notice provisions of Section 216(b), such as achieving judicial efficiency and

lowering individual costs for plaintiffs.  *Fasanelli*, 516 F. Supp. 2d at 323.  "[T]hese benefits

'depend on employees receiving accurate and timely notice concerning the pendency of the

collective action, so that they can make informed decisions about whether to participate.'"  *Id.*

(quoting *Hoffmann-La Roche*, 493 U.S. at 170).

### D.   <u>Statute of Limitations</u>

"The statute of limitations under the FLSA is ordinarily two years, but it may be extended

to three years if the claim arises from a 'willful' violation."  *Yu G. Ke v. Saigon Grill, Inc.*,

595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)).  To satisfy the willfulness

requirement, a plaintiff must demonstrate that the employer either acted knowingly or "'showed

reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *Id.*

(quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

As the statute of limitations does not toll for opt-in plaintiffs until they consent to appear,

*see Lynch*, 491 F. Supp. 2d at 371, courts will, following a finding that the named plaintiff is

similarly situated to the potential collective members, "routinely approve court-authorized notice

in order to ensure that the rights of potential claimants do not expire during the discovery

process."  *Grant*, 2014 WL 1918602, at *2; *see also Khamsiri v. George & Frank's Japanese

Noodle Rest. Inc., No.* 12cv265 (PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012)

("[C]ourt-authorized notice is appropriate[ ] to prevent erosion of claims due to the running

statute of limitations . . . .").  The FLSA provides that a collective action is considered

commenced for each individual plaintiff:  "(a) on the date the complaint is filed, if [the

individual plaintiff] is specifically named as a party plaintiff in the complaint . . . or (b) . . . on the subsequent date on which such written consent [to become a party plaintiff] is filed in the court . . . ."  29 U.S.C. § 256.

## II.    PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A PROPOSED COLLECTIVE

As discussed above, the question for the Court on Plaintiffs' motion for conditional certification of an FLSA collective is whether the named Plaintiffs have made the necessary modest showing, through the allegations in the Complaint and in the submitted Declarations, that they and others share at least some similar issue of law or fact, material to the disposition of their claims, with respect to the defendant's alleged common policy or plan that violated the FLSA. In accordance with the reasoning of *Scott*, the named Plaintiffs need not show that there are *no dissimilarities* among them and other employees, as "they may proceed in a collective *to the extent* they share a similar issue."  *Scott*, 954 F.3d at 516 (emphasis added).

In their Second Amended Complaint, Plaintiffs – who claim to have performed work at the Restaurant as salad makers, dishwashers, dessert makers, cleaners, and/or prep cooks (2d Am. Compl. ¶¶ 40-41, 56-58, 70-71) – purport to bring this action on behalf of themselves and "other similarly situated persons who are current and former employees of [the Restaurant]" during the statute-of-limitations period and who elect to opt in to the action (*id*. ¶ 30).  More specifically, Plaintiffs allege, in their pleading, that the collective should be comprised of approximately 30 current and former cooks, salad makers, waiters, and dishwashers.  (*Id*. ¶ 31.) In their briefing, however, Plaintiffs propose to alter the composition of the requested collective, so as to omit waiters, but to add prep cooks and delivery workers.  (Pl. Mem., at 1-3, 8, 9.)

In their opposition brief, Defendants contend that, even if Plaintiffs, at this juncture, "need only make a modest factual showing sufficient to demonstrate that they and potential

16

plaintiffs together were victims of a common policy or plan that violated the law," Plaintiffs'

have not met that modest burden here.  (Def. Mem., at 5 (citation omitted).)  Although

Defendants appear to suggest that certification of any FLSA collective would be inappropriate,

their opposition chiefly argues that Plaintiffs have failed to make any showing regarding

positions and job titles other than salad makers and dishwashers.  (*See generally id.*)

For the reasons set forth below, the Court concludes that conditional certification – albeit

of a more limited collective than the one sought by Plaintiff – is appropriate.

> **A.      Plaintiffs Are Entitled to Conditional Certification of a
>         <u>Collective That Includes Salad Makers and Dishwashers.</u>**

Defendants first appear to suggest that the named Plaintiffs are not similarly situated to

one another because they performed a range of duties in different job positions during distinct

periods of time.  (Def. Mem., at 6.)  It is true that, according to the Second Amended Complaint

(and, where available, Plaintiffs' Declarations), the named Plaintiffs performed various primary

roles:  Plaintiffs plead that Pequero worked primarily as a salad maker (2d. Am. Compl. ¶ 40),

that Martinez worked primarily a dishwasher (*id*. ¶ 70), and that Mojica started as a dishwasher,

but was then later tasked with the additional duties of making salads and desserts (*id*. ¶¶ 56-58).

Nonetheless, as set out above, the relevant inquiry for the Court is not whether plaintiffs in the

potential collective are identically situated, or that they possess the same attributes with respect

to their job, but rather whether they share common, material questions of fact or law with respect

to their claims.  *Scott,* 954 F.3d at 516.

Despite the alleged disparities in their primary roles, the Court concludes that, under the

governing test, Plaintiffs have met their burden of making a "modest factual showing" that,

during the proposed period of the collective, those who worked (or continue to work) as

dishwashers and salad makers at the Restaurant are "similarly situated" with respect to the

17

common types of FLSA violations they claim.  *Id.*  At some point during their employment, *all three* of the named Plaintiffs were allegedly required, at least as part of their jobs, to prepare salads and wash dishes.  (*See* 2d. Am. Compl. ¶¶ 40-41, 56-58, 70-71.)  The named Plaintiffs also allege that each of them regularly worked in excess of 40 hours per week (*id.* ¶¶ 43-46, 59-62, 73-78), was not required to "clock in" and "clock out" until August 2018 (*id.* ¶¶ 48, 63, 79), and was paid a flat salary that did not include overtime compensation (*id.* ¶¶ 52-54, 67-69, 82-84).

From these allegations and the submitted Declarations, the Court can "fairly infer" that the named Plaintiffs and others who, like them, served in the positions of salad preparers and dishwashers, were subject to the same alleged flat-rate pay scheme and denied overtime wages. *She Jian Guo v. Tommy's Sushi Inc.*, No. 14cv3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (granting conditional certification to a collective of deliverymen based on the three named Plaintiffs' pleadings and affidavits stating their own hours and rates of pay as deliverymen); *accord Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17cv273 (LAP), 2018 WL 1737726, at *3 (S.D.N.Y. Mar. 26, 2018) (at initial stage, finding it permissible to "infer" from statements of two named plaintiffs – both of whom worked as deliverymen for defendants, although at different locations – "that other deliverymen worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA" (quoting *She Jian Guo*, 2014 WL 5314822, at *3)); *see also Liping Dai v. Lychee House, Inc.*, No. 17cv6197 (DF), 2018 WL 4360772, at *7 (S.D.N.Y. Aug. 29, 2018) (where two plaintiffs who were both food "preparers" or "cutters" alleged common wage violations, court could infer that other food preparers or cutters were subject to the same violations).

In this case, the factual and legal issues alleged to be common with respect to the way in which the named Plaintiffs were paid – in their shared positions as salad makers and dishwashers – are material to the question of whether Plaintiffs are entitled to FLSA damages. The Court is therefore satisfied that Plaintiffs have met their burden of showing that dishwashers and salad makers are similarly situated for purposes of conditional collective certification.

### B.   Plaintiffs Have Not Sufficiently Demonstrated That the Collective Should Include Workers in Other Job Positions.

As noted above, Plaintiffs seek to include in the proposed collective not just salad makers and dishwashers, but also workers who held certain other positions at the Restaurant. Defendants argue that, even if Plaintiffs have made the requisite factual showing to certify a collective of salad makers and dishwashers, they have not demonstrated a basis for a collective broader than that.  (*See* Def. Mem., at 5-8.)  Specifically, they contend (1) that Plaintiffs fail to allege that they are similarly situated to the other potential members of the collective, (2) that Plaintiffs fail to demonstrate that they and the other potential members of the collective were subject to a common unlawful policy or plan, and (3) that, in any event, Plaintiffs' allegations are conclusory and based on hearsay.  (*Id.*, at 5-12.)  To support these arguments, Defendants point to the Declarations of Eggiman and Lohmeyer, attesting that employee work hours and rates of pay differed depending on their job title, position, and duties, and that dishwashers and salad makers were never permitted to work more than 40 hours per week, unlike certain other positions such as cooks.  (Eggiman Decl. ¶¶ 11-16; Lohmeyer Decl. ¶¶ 14-23.)

As a preliminary matter, any factual dispute regarding whether Plaintiffs and members of the putative collective were in fact prohibited from working over 40 hours per week is not appropriately resolved at this stage.  *See Liping Dai*, 2018 WL 4360772, at *5 ("[A]t this initial procedural stage, the Court does not 'resolve factual disputes, decide substantive issues going to

the ultimate merits, or make credibility determinations.'" (quoting *Shillingford v. Astra Home Care, Inc*., 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018))).  Still, Defendants' mention of the diversity of positions, responsibilities, work hours, and rate of pay is significant, given that, to be entitled to conditional certification, Plaintiffs must show that there is at least some common question of law or fact that justifies including the identified job positions in the collective.  *Scott*, 954 F.3d at 516.  Further, the Second Circuit's requirement that such common questions be "material" suggests that Plaintiffs must do more than show that workers were employed by the same employer.  Even accepting that the burden that Plaintiffs must meet is minimal, they have not, in this case, alleged or proffered any facts to justify adding to the collective individuals who worked at the Restaurant in positions other than salad makers and dishwashers.

### 1.    Cooks and Delivery Workers

Among the other positions that Plaintiffs seek to include in the collective are the positions of "cooks" and "delivery people."  (2d Am. Compl. ¶ 2; Pl. Mem., at 1-3.)  Plaintiffs, however, have failed to allege or otherwise to provide *any* details regarding any individuals who have held those positions at the Restaurant, or any complaints they allegedly voiced to Pequero and Mojica.  (Pequero Decl. ¶ 15; Mojica Decl. ¶ 13.)  Plaintiffs' submissions do not include, for example, any information regarding the duties, hours, or rate or method of pay of any cooks or delivery workers.  Absent such information, the Court has no basis to conclude that such workers were subject to common pay policies by Defendants, or that they have claims that share any common questions of fact or law with Plaintiffs' claims.  In fact, Plaintiffs' sole support for this aspect of their motion is their bald assertion that they and the potential opt-in plaintiffs in these two job categories are similarly situated "because they are subjected to the same, uniformly-applied illegal pay practice."  (Pl. Mem., at 8.)  This allegation is entirely conclusory, and thus cannot,

without anything more, permit even conditional certification of a collective that includes cooks

and delivery people.  *See Morales*, 2006 WL 278154, at *2-3; *see also Liping Dai*, 2018 WL

4360772, at *10 (denying certification where plaintiffs failed to provide information that "all

non-exempt employees" performing job duties other than the ones performed by named plaintiffs

were subject to a common unlawful compensation policy); *Sanchez v. JMP Ventures, L.L.C.,* No.

13cv7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (plaintiff's "generalized

allegations" regarding defendants' "common practices" were insufficient to permit certification).

Furthermore, while Plaintiffs suggest that other employees complained about not

receiving overtime pay, Plaintiffs have failed to specify whether any of those other employees

worked as cooks or delivery people.  Plaintiffs recognize in their Reply that, in the submitted

Declarations of Pequero and Mojica, neither ever indicated the positions held by the workers

who purportedly voiced complaints to them (*see* Pl. Reply, at 2-3 (stating that Plaintiffs

"arguably should have listed the positions of the complaining individuals")), but Plaintiffs

contend that there is "no reason for this Court to believe that the complaining individuals worked

different positions" than those of the named Plaintiffs (*id*.).  Apart from the fact that the Court

should not engage in speculation, Plaintiffs' suggested inference – if true – would lend no

support to Plaintiffs' argument that the collective should be defined to include workers in

positions that they, themselves, did not hold.

Even if the complaining employees included one or more cooks or delivery workers – a

conclusion this Court has absolutely no basis for reaching, and that is contrary to Plaintiffs'

suggestion – Plaintiffs have failed to provide any details about the content, context, and

timeframe of the complaints that Pequero and Mojica allegedly heard from these fellow

employees.  (Pequero Decl. ¶ 15; Mojica Decl. ¶ 13.)  While it is appropriate for a court to rely

upon a plaintiff's own pleadings and declarations at the initial stage of conditional certification, a plaintiff who bases an assertion of a common policy on conversations with co-workers must still "provide a minimum level of detail regarding the contents of those conversations or observations." *Reyes v. Nidaja, LLC*, No. 14cv9812 (RWS), 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015); *see also Morales v. Plantworks, Inc.*, No. 05cv2349 (DC), 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (denying conditional certification where plaintiffs supported claim that they were similarly situated to other employees only with conclusory allegation that "[t]here are over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation while working for Defendants").  Here, Plaintiffs have presented no factual information beyond their assertion that "other employees complained to [them] that they were not being paid overtime even though they worked more than 40 hours a week."  (Pequero Decl. ¶ 15; Mojica Decl. ¶ 13.)  Plaintiffs have made no factual showing, for example, regarding the hours that these other employees actually worked, during what time period, or regarding the amounts or methods of their payment.

Based on Plaintiffs' submissions, the Court simply does not have a sufficient basis to conclude, even as a preliminary matter, that cooks or delivery people were similarly situated to any of the named Plaintiffs with respect to an alleged common policy or plan that violated the FLSA, and therefore should be permitted to join the collective.  *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015) (denying certification where plaintiffs' complaint and affidavits did not contain any factual allegation specific to other types of employees besides delivery people and chefs, such as "the specific hours worked by, or the amounts paid to, other employees"); *see also Garcia v. Spectrum of Creations Inc.*, No. 14cv5298 (GWG), 102 F. Supp. 3d 541, 549-50, 2015 WL 2078222, at *7 (S.D.N.Y. May 4,

2015) (limiting certification to only those individuals who performed plaintiffs' specific job positions, because plaintiffs' affirmations "provide[d] no information . . . about individuals who performed other job functions at defendants' business").

As Plaintiffs have failed to meet even their modest burden of showing that cooks and delivery workers employed by Defendants are similarly situated to them, the Court will not conditionally certify a collective that includes these categories of workers.

### 2.   <u>Waiters</u>

As noted above, while Plaintiffs' Second Amended Complaint purports to seek the inclusion of waiters in the collective (*see* 2d Am. Compl. ¶ 31; *but see id.* ¶ 2), neither Plaintiffs' briefing on their motion nor the submitted Declarations make any mention of the position (*see generally* Pl. Mem.; Pequero Decl.; Mojica Decl.).  For this reason, as well as the reasons discussed above with respect to cooks and delivery workers (which apply equally to waiters), inclusion of waiters in the collective would also be inappropriate.

### 3.   <u>Prep Cooks</u>

Finally, Plaintiffs seek to include "prep cooks" in the collective, which requires a more nuanced analysis.  Although none of the named Plaintiffs allegedly served primarily in such a position, the Second Amended Complaint does allege that one of the Plaintiffs – Pequero – performed at least some "prep cook" work during his employment.  (*See* 2d. Am. Compl. ¶¶ 40-41 (alleging that Pequero was employed "primarily as a salad maker," but "was also required to wash dishes, clean the restaurant and do prep cook work").)  In contrast, this allegation about Pequero's supposed "prep cook work" appears neither in his Declaration, nor in Plaintiffs' memorandum of law in support of their motion.  (*See generally* Pequero Decl.; Pl. Mem.).  Despite the fact that this was omitted from Plaintiffs' motion papers, the Court will

nonetheless accept the allegations in their pleading for purposes of this motion, and will

therefore assume, at this juncture, that Pequero performed at least some prep cook duties.

What the Court *cannot* assume, however, is that others workers, holding the position of

"prep cook," should be considered similarly situated to Pequero with regard to any alleged

common policy or plan of Defendants, in violation of the FLSA.  First, Pequero has not actually

contended that his own job position was of that of a "prep cook" – rather, as noted above, at most

he has alleged that he was required to perform some of the functions of that job.  Second,

Pequero is the only one, of the three named Plaintiffs, who is alleged to have performed any prep

cook duties.  (*See generally* 2d. Am. Compl., Pl. Mem.)  Third, as neither Pequero nor Mojica

identifies the job positions of any other workers who purportedly complained to them about

Defendants' pay practices (*see generally* Pequero Decl.; Mojica Decl.), the Court has no basis to

conclude that any of those workers were employed as prep cooks.  Fourth, more generally, apart

from their allegations about Pequero, Plaintiffs have offered no information regarding how

workers who served in the position of "prep cook" were paid, or what hours they worked, during

any specified period of time.

The Court acknowledges that it has previously found that the representations of a single

named plaintiff can be sufficient to support conditional certification of a collective that included

other workers holding the same position as that plaintiff.  *See Zhang v. Hiro Sushi at Ollie's Inc.*,

No. 17cv7066 (DF), 2019 WL 699179, at *8 (S.D.N.Y. Feb. 5, 2019).  In *Zhang*, however, the

Court noted that the plaintiff, a delivery worker, had also described conversations with several

other current and former delivery workers, and had attested that, based on those conversations,

the other workers were paid at the same rate as he was, which was below the minimum wage.

*See Zhang*, 2019 WL 699179, at *9.  In fact, a review of the case law shows that, in cases where

only one plaintiff held a certain position, courts in this District have generally not granted conditional certification of a collective that included others in that position, absent some representation by the plaintiff that he or she had observed, or had specific conversations with, others in similar roles, and could therefore state with some specificity that the others were also not properly paid. *See, e.g., Hernandez v. Bare Burger Dio Inc.,* No. 12cv7794 RWS, 2013 WL 3199292, at *2 (S.D.N.Y. June 25, 2013) (granting conditional certification where plaintiff, the only individual to submit an affidavit in support of certification, asserted that "he personally observed that other tipped employees were also paid below the statutory wage").

In this case, Plaintiffs have offered no facts at all to support the inference that others who performed the job of "prep cook" also worked overtime, were not paid overtime wages, or otherwise share any material questions of fact or law with Pequero or Plaintiffs generally. Thus, for the same reason the Court rejects Plaintiffs' request to include cooks, delivery workers, and waiters from the collective, it similarly concludes that Plaintiffs have not make even the "modest" requisite showing that prep cooks should be considered "similarly situated" employees with respect to Defendants' alleged unlawful practices.

Accordingly, at this stage, the Court only finds it appropriate to grant conditional certification with respect to the job positions of salad maker and dishwasher.

## III.   SCOPE AND FORM OF COURT-AUTHORIZED NOTICE

As part of their motion for collective action certification, Plaintiffs request that the Court order that notice be posted and issued to all potential collective action members. (Pl. Mem., at 8-10.) Plaintiffs have submitted a Proposed Notice of Collective Action Lawsuit (*see* Aronauer Decl., Ex. A), which they request that the Court authorize for distribution to all covered employees. (Pl. Mem., at 8.) Defendants do not object to the scope or form of the Proposed

Notice in their Opposition, but rather argue generally that the Court should deny Plaintiffs'

Motion in its entirety.  (Def. Mem., at 13.)  In light of the above rulings, the Court will authorize

notice, but the proposed notice submitted by Plaintiffs must be modified to some extent,

consistent with this Order, and as discussed below.

A.    **Appropriate Notice Period**

Plaintiffs' Second Amended Complaint would limit a proposed FLSA collective to

similarly situated employees who have worked for Defendants in the three-year period preceding

the initiation of this suit (2d. Am. Compl. ¶ 30), and, as drafted, the body of the Proposed Notice

would inform potential opt-in plaintiffs that "[their] federal wage and hour claims are limited by

a two or three-year statute of limitations" (Aronauer Decl., Ex. A at 8).  Nonetheless, the

Proposed Notice is addressed to any person who was "employed as a cook, prep cook, salad

maker, dishwasher or delivery person at [the Restaurant] from December 26, ***2012***, through the

present" (Aronauer Decl. ¶ 4 (emphasis added)) – *i.e.*, for a period commencing six years before

the filing of the initial Complaint in this action.[4]  Similarly, Plaintiff's supporting Memorandum

of Law requests that the Court order Defendants to produce names and contact information for

all potential collective members employed by Defendants in the six years prior to the filing of

this lawsuit, for the purpose of being able to provide them with notice of their right to opt in to

the collective.  (*See* Pl. Mem., at 9.)

Although Plaintiffs do not explain why they are now seeking to direct their Proposed

Notice to employees who worked outside the maximum FLSA statute-of-limitations period, the

---

[4] Defendants are thus incorrect when then assert that Plaintiffs are requesting judicial certification of a collective of all employees "who ever worked at Defendant Montafon LLC without specifying or even hinting the time periods during which the putative class members were employed by Defendant."  (Def. Mem., at 6.)

Court assumes that Plaintiffs are trying to allow for a collective action that would cover not only

FLSA claims, but also any pendent state-law claims that the members might have under the

NYLL. *See* N.Y. Lab. Law § 663(3) (setting six-year limitations period for NYLL claims).

While some courts have allowed court-authorized notice to potential members of an FLSA

collective to reference a six-year period, *see, e.g.*, *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d

397, 410 (S.D.N.Y. 2012) (collecting cases), others have found that lengthening the period may

be cause for confusion and inefficiency, *see, e.g.*, *Trinidad v. Pret a Manger*, 962 F. Supp 2d

545, 563 (S.D.N.Y. 2013).  As the motion before the Court is only for collective certification of

an FLSA opt-in collective and not class certification under Fed. R. Civ. P. 23 for claims under

the NYLL, the Court is of the view that a time-period limitation of two to three years would be

appropriate and proper.  *See Romero v. La Revise Associates, L.L.C.*, 968 F. Supp. 2d 639,

648-49 (denying plaintiff's request to lengthen time period from three to six years on the grounds

that no New York state class action had yet been certified).

As set forth above, the statute of limitations under the FLSA is two years, three if the

defendant's conduct is found to be "willful."  (*See* Discussion, *supra*, at Section I(C).)  Here,

Plaintiffs allege that Defendants willfully denied them overtime wages in violation of the FLSA.

(2d. Am. Compl. ¶¶ 31-33).  Given these allegations, the Court finds that the relevant period for

this collective should run from December 26, 2015 to the date of final judgment in the action.

*See Liping Dai*, 2018 WL 4360772, at *11.  While Defendants deny any willful violations (*see*

Answer ¶¶ 31-33), this is of no moment for purposes of defining the scope of the collective, *see*

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) ("Where willfulness is

disputed, the court applies the three-year statute of limitations for purposes of certifying a

representative action.").  The Proposed Notice should therefore be modified, so as to be directed

to those employed as a salad maker or dishwasher at the Restaurant from December 26, 2015, through the present.

### B.   Appropriate Opt-In Period

Plaintiffs propose that the Court approve a 60-day opt-in period for potential plaintiffs who may wish to join the collective.  (*See* Aronauer Decl., Ex. A at 6.)  In similar cases, this District has approved a 60-day opt-in period, which the Court finds appropriate here.  *See, e.g.*, *Racey v. Jay-Jay Cabaret, Inc.*, No. 15cv8228 (KPF), 2016 WL 3020933, at *7 (S.D.N.Y. May 23, 2016) (finding that a 30-day opt-in period was too short "to effect [n]otice on the potential opt-in plaintiffs"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2011) (collecting cases).

### C.   Language of the Notice

Plaintiffs request that all notices or posts to employees' attention be both in English and Spanish, the predominant languages of the proposed collective.  (Aronauer Decl. ¶ 4.)  This type of request has been granted in other cases, *see, e.g.*, *Dai v. Lychee House, Inc.*, No. 17cv6197 (DF), 2018 WL 4360772, at *12 (S.D.N.Y. Aug. 29, 2018); *see also Castillo v. Perfume Worldwide Inc.*, No. 17cv2972 (JS) (AKT), 2018 WL 1581975, at *15 (E.D.N.Y. Mar. 30, 2018) (finding that, in light of broad remedial purpose of FLSA, translating a notice into Spanish was appropriate), and the Court finds it reasonable and appropriate in this case, to increase the effectiveness of the notice in reaching potential opt-in plaintiffs.  Accordingly, Plaintiffs are granted leave to send out notice of the collective action in both English and Spanish.

### D.   Posting of the Notice

In addition to requesting that the notice be mailed to all potential plaintiffs, Plaintiffs also request that the notice be posted at the Restaurant "in a location clearly visible to potential opt-in

Plaintiffs."  (Pl. Mem., at 9.)  As "[c]ourts routinely approve requests to post notice on employee

bulletin boards and in other common areas, even where potential members will also be notified

by mail," *Whitehorn,* 767 F. Supp. 2d at 449 (collecting cases), this request is granted.

Defendants are hereby ordered to post the modified notice in the Restaurant in a location clearly

visible to potential opt-in Plaintiffs.[5]

### E.     Defendants' Production of Contact Information for Potential Opt-In Plaintiffs

In order to facilitate the provision of notice, Plaintiffs request that Defendants produce a

"computer-readable list" containing contact information ("name, last known mailing address,

alternate address (if any), all known telephone numbers and dates of employment at Montafon")

for all cooks, prep cooks, salad makers, dishwashers, and delivery people at any point in the six

years prior to the filing of the instant suit.  (Pl. Mem., at 9-10.)  Courts in this District

"commonly grant" requests for the production of such information, in connection with the

conditional certification of an FLSA collective action.  *Martin v. Sprint/United Mgmt. Co*., No.

15cv5237 (PAE), 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *see also In re Penthouse*

*Exec. Club Comp. Litig.*, 2010 WL 4340255, at *5 (noting that "courts often order the production

of such information at the notice stage").  Plaintiffs also request that the Court order Defendants

to produce such information within 10 days of its Order being issued.  (Pl. Mem., at 9.)

---

[5] The Court recognizes that all restaurants in New York City either partially or entirely shut down as a result of the COVD-19 outbreak, and the Court is unaware of the Restaurant's current status.  If the Restaurant is in operation, even partially, then the Notice should be posted in a location where employees would be likely to see it.  If the Restaurant is closed, but still in Defendants' control, then the notice should be posted on the exterior of the building, and, upon its reopening, the notice should be re-posted inside – again where it would be visible to employees.

Accordingly, Plaintiffs' request that Defendants be required to provide the requested information is granted, but, consistent with the Court's decision as to the appropriate scope of the collective, such production need only be made regarding potential opt-in plaintiffs who worked at Defendants' Restaurant as dishwashers and/or salad makers during the period from December 26, 2015 to present. *See Ji Li,* 2015 WL 6828056, at *5 (where the court found that plaintiffs had only established that a group of delivery workers was similarly situated, defendants would only be ordered to produce the requested information for the delivery workers). The information should be provided by Defendants in an electronic, "computer-readable" form (*e.g.*, a Microsoft Excel spreadsheet).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for conditional certification of an FLSA collective action and Court-authorized notice (Dkt. 58) is granted in part and denied in part. The Court grants conditional collective action certification, and authorizes notice, of an FLSA collective, but only to the extent that the collective would cover former and current workers employed by Defendants at the Mont Blanc 52 restaurant, as salad makers and/or dishwashers, for the period from December 26, 2015 to the present.

In order to effectuate notice to potential opt-in plaintiffs:

(1)     Plaintiffs shall (a) modify the Proposed Notice and Consent Form, consistent with this Order, (b) confer with Defendants in order to agree on a final version of each form, and (c) submit final versions (as well any translations) for the Court's approval no later than two weeks from the date of this Order;

(2)     To facilitate notice to potential opt-in plaintiffs, Defendants shall, within three weeks of the date of this Order, disclose to Plaintiffs' counsel the names, last known mailing

address, alternate address (if any), all known telephone numbers, and dates of employment at

Montafon LLC of all potential plaintiffs within this conditionally certified collective action.

(3)     Upon the Court's approval of the modified notice, Plaintiffs' counsel may arrange

to have it disseminated via mail, in English and Spanish, to all potential members of the

collective; and

(4)     At the same time that the notice is disseminated by Plaintiffs' counsel, Defendants

shall post a copy of the notice, in English and Spanish, at the Mont Blanc 52 restaurant in a

conspicuous and unobstructed location or locations likely to be seen by all currently employed

members of the collective, and (consistent with n.5, *supra*) the notice shall remain so posted

throughout the opt-in period.

Dated:  New York, New York
        July 15, 2020

                                        SO ORDERED


                                        _____
                                        DEBRA FREEMAN
                                        United States Magistrate Judge


Copies to:

All Counsel (via ECF)

31